Filed 7/2/26  P. v. Gonzalez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H053194 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. F1869830) |
| v. | |
| EDUARDO DAMIEN GONZALEZ, | |
| Defendant and Appellant. | |

This is defendant Eduardo Damien Gonzalez's second appeal to this court following his conviction by jury trial of second degree murder (Pen. Code,[1] § 187, subd. (a)), among other crimes.

In his prior appeal from the judgment, this court reversed the judgment and remanded for resentencing based on postconviction changes made to section 654.  (*People v. Gonzalez* (Feb. 15, 2024, H049857) [nonpub. opn.].)  Thereafter, the trial court conducted a full resentencing and entered judgment.  Appointed counsel for Gonzalez filed a brief asking this court to review the record to determine whether there are any arguable issues.  (See

---

[1] All further unspecified statutory references are to the Penal Code.

*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  Gonzalez was advised of the right to file a supplemental brief but has not responded.

After independent review of the record, this court requested briefing from the parties on whether the trial court erred in awarding postconviction conduct credits and, if so, whether this court should order the abstract of judgment corrected.  In their responses, the parties answer agree on both points, as do we.  We order the abstract of judgment corrected and otherwise affirm the judgment.

## I.  FACTS AND PROCEDURAL BACKGROUND

*A.  Facts*

We take the facts verbatim from this court's prior opinion.  (*People v. Gonzalez, supra*, H049857).)  On August 3, 2018, defendant caused two vehicle collisions while driving his Dodge Durango.  About 7:20 p.m., a woman was driving a car with her husband in the passenger seat and their two-year-old grandson in the back seat.  As their car was stopped at a light to make a left turn, defendant turned into the intersection, drove his vehicle toward the car making a "screeching" wide turn, and stopped a short distance from the woman driving the car.  The woman looked at defendant, who appeared "delusional" and "wobbling."  As the woman then began to drive her car forward to make the left turn, defendant reversed his vehicle a few feet and then drove forward, striking the woman's car on its rear door.

Defendant drove off after colliding with the car.  A witness to the collision followed defendant.  The witness obtained defendant's license plate identification when defendant's car "kind of ran into a bush."  The witness described defendant as looking "glazed and confused" at that point.  The witness then returned to the car that had been struck and provided the

2

license plate identification to the car's driver and her husband, who relayed it to law enforcement.

About 7:30 p.m. – moments after defendant's collision with the car – law enforcement responded to another collision involving defendant. Oliver and V.M. were on a motorcycle when defendant veered off the road to the right, then overcorrected to the left, crossing into oncoming traffic and striking the motorcycle. Oliver died from injuries resulting from the collision and V.M. was injured, including ten broken ribs, a torn aorta, and injuries to one of her legs that required emergency surgery. Defendant did not stop at the scene of the second collision.

Witnesses to the second collision called 911. Law enforcement officers found defendant's vehicle stopped away from the scene of the collision with "significant front end damage." Defendant's eyes were "glassy and watery," his speech was "very slurred," he "had a very hard time" answering questions from law enforcement officers, and he "said things that didn't make sense." In addition, as a California Highway Patrol officer approached defendant's vehicle, he saw defendant "shoving what looked like dollar bills or some kind of bills underneath the front driver's seat." This officer later inventoried the vehicle and found currency on the vehicle's floorboard, including a dollar bill that "was folded in a strange way" and contained a white powder the officer believed to be cocaine. A law enforcement official who responded to the scene of the first collision learned another collision had occurred and took the occupants of the car defendant had earlier struck to the scene of defendant's vehicle, where they confirmed it was the same vehicle that had struck them.

Defendant refused to perform field sobriety tests. Defendant agreed to provide a breath sample to measure his blood alcohol level, but he did not provide a satisfactory breath sample, blowing air from the side of his mouth

3

instead of fully blowing into the breath machine's tube. Defendant then refused to provide a blood sample to measure his blood alcohol level. Law enforcement officials thus obtained a warrant to test defendant's blood. A blood sample taken at 10:28 p.m. measured defendant's blood alcohol level at 0.182 percent, with a margin of error of 0.007 percent. An expert toxicologist testified that a person with defendant's physical characteristics would have had a blood alcohol level of between 0.212 percent and 0.24 percent at 7:30 p.m. (the time of the second collision), assuming the person was "in a post-absorptive state," meaning at "the end of alcohol absorption, which is at or near the peak blood alcohol concentration that is achieved during that drinking episode." The blood test also confirmed the presence of cocaine in defendant's blood.

The defense presented no evidence at trial, and defendant did not testify.

### B. Trial and First Appeal[2]

A jury convicted Gonzalez of second degree murder (§ 187, subd. (a); count 1), gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a); count 2), hit and run driving resulting in permanent serious injury or death (Veh. Code, § 20001, subds. (a) & (b)(2); count 3), driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a); count 4), driving under the influence of alcohol with a blood alcohol level of 0.08 percent or more causing injury (Veh. Code, § 23153, subd. (b); count 5), misdemeanor hit and run driving causing property damage (Veh. Code, § 20002, subd. (a)(1), (2); count 6), and misdemeanor driving when a license is suspended or revoked for a prior driving under the influence conviction (Veh. Code,

---

[2] We take the description of Gonzalez's trial and initial sentencing from this court's opinion in his first appeal. (*People v. Gonzalez, supra*, H049857.)

4

§ 14601.2, subd. (a); count 7). For count 2, the jury found true allegations that defendant personally inflicted great bodily injury on Dillon Oliver (§§ 667, 1192.7, subd. (c)(8)) and fled the scene (Veh. Code, § 20001, subd. (c)). For counts 4 and 5, the jury found true allegations that defendant personally inflicted great bodily injury on V.M. (§§ 12022.7, subd. (a), 1203, subd. (e)(3)), refused a peace officer's request to submit to, and willfully failed to complete a chemical test (Veh. Code, § 23577, subd. (a)), and had a blood alcohol level of 0.15 percent or more (Veh. Code, § 23578). In bifurcated proceedings, the trial court found with regard to counts 2, 4, and 5 that defendant had previously been convicted of a violation of Vehicle Code section 23153, and that with regard to count 7, defendant had previously been convicted of a violation of Vehicle Code section 14601.2 within five years of the current offense.

The trial court sentenced Gonzalez to 15 years to life, consecutive to 10 years, consisting of the following: 15 years to life on count 2, five years for count 2's fleeing the scene enhancement, the midterm of two years on count 4, and three years for count 4's great bodily injury enhancement. The court imposed but stayed punishment under section 654 for other counts, including 15 years to life on count 1.

Gonzalez appealed to this court, arguing (1) the trial court erred when it denied his request to include a definition for "deliberately acted" in the second degree murder instruction (CALCRIM No. 520); (2) the trial court erred in responding to the jury's request to specify the act or acts involved in the murder count; (3) the cumulative prejudicial effect of the two alleged instructional errors required reversal; and (4) remand for resentencing was required to allow the trial court to exercise its discretion under amended section 654 to impose a lesser punishment. This court determined the trial

5

court did not commit instructional error but decided the matter must be remanded for resentencing because of postsentencing changes to section 654. (*People v. Gonzalez, supra*, H049857.)

## C. *Resentencing*

Following remand from this court, both parties submitted briefs to the trial court in anticipation of resentencing. Gonzalez requested a term of 15 years to life; the People asked the court to reimpose the original sentence of 15 years to life, consecutive to 10 years.

The trial court conducted a resentencing hearing.[3] The prosecutor reiterated that the court should reimpose the original sentence. The prosecutor described the serious injuries and multiple surgeries experienced by V.M. The mother of the deceased victim (Oliver) addressed the court. Oliver's mother described to the court the "traumatic grief" she and her family continue to experience six years after Oliver's death at age 24 and informed the court that she could still not take a family photo because of the absence of her son. Oliver's mother emphasized the callousness that Gonzalez showed by not pulling over after the first accident and thereafter by not stopping to care for her son after he hit him. She observed that Gonzalez has never apologized to her or her family or showed any remorse for his crimes. Oliver's sister-in-law also addressed the court. She described the continuing pain felt by his family, and the many family events Oliver would not experience. Both witnesses requested that the court not reduce Gonzalez's sentence.

---

[3] Gonzalez's resentencing hearing occurred over two court days. The trial court heard victim testimony and argument on February 11, 2025, and resentenced him on March 4, 2025.

Before pronouncing sentence, the trial court stated it had reviewed the parties' briefing, the original probation report and attachments, the statements by Oliver's family, and letters in support of Gonzalez, as well as documentation of the programs Gonzalez has engaged in while incarcerated.

The trial court stated it had considered "all of the sentencing options available in this case, including Penal Code section 654 as now amended." The court also considered its discretion to strike enhancements, run enhancements concurrently, stay punishment, as well as to impose low- or middle-term sentences. The court considered the objectives of sentencing, and the applicable court rules. The court found the facts of the case "very serious" and that Gonzalez had two alcohol-related prior convictions, had recently been on supervision when he committed the instant crimes, was not youthful or aged, and no mental health issues that played a substantial role in the offenses. The court found a grant of probation was not warranted under the circumstances.

In its application of section 654, the trial court considered whether to impose a sentence on count 1 or count 2, including the Vehicle Code section 20001, subdivision (c) enhancement. The court also considered California Rules of Court, rules 4.421 and 4.423, as well as sections 1170, subdivision (b)(6) and 1385. The court found Gonzalez's crimes involved great harm and planning, due to Gonzalez's decision to drive while intoxicated. The court also found that Gonzalez's crimes were of increasing seriousness.

The trial court further found that Gonzalez had experienced violence in his childhood home, which "likely l[e]d to his abuse of alcohol as a coping mechanism." The court found that childhood trauma did not substantially contribute to the commission of the offenses, but the court did consider Gonzalez's "efforts to program and work on his alcoholism in state custody"

7

when arriving at a "just sentence."  The court also noted that section 1385 instructs that where the imposition of multiple enhancements could result in a sentence over 20 years, that factor weighs heavily toward dismissal of the enhancement.

Balancing these factors, the trial court elected to impose a middle term sentence on counts 3, 4, and 5, and to impose sentence on count 1 but not count 2, meaning that the enhancement attached to count 2 "will be stayed and not imposed."  The court also elected not to impose a concurrent sentence on count 4, due to the gravity of the injuries suffered by the V.M., that count's named victim.

At resentencing, the trial court imposed an aggregate sentence of 15 years to life, consecutive to five years.  On the individual felony counts, the court imposed the following sentences:  on count 1, a term of 15 years to life; on count 2, a term of 15 years to life with a consecutive five-year enhancement under Vehicle Code, section 20001, subdivision (c), stayed under section 654; on count 3, a three-year term, stayed under section 654; on count 4, a term of two years, with a consecutive term of three years under section 12022.7, subdivision (a) and with four days under Vehicle Code section 23577, subdivision (a) stricken; and on count 5 a term of two years, with a consecutive term of three years under section 12022.7, subdivision (a) and with four days under Vehicle Code section 23577, subdivision (a) stricken, all stayed pursuant to section 654.  On counts 6 and 7 (the misdemeanor counts), the court imposed a sentence of 100 days on each, concurrent with the other counts and awarded 100 days of custody credits and deemed the sentences served.

The trial court awarded custody credits, broken into distinct periods. For "phase I" (between Gonzalez's arrest and his first sentencing on March 5,

8

2020), on counts 1 and 2 the court awarded no custody credits, and on counts 3 through 5 it awarded 581 actual days, plus 87 days under section 2933.1, for a total of 668 days.[4]  For "phase II" (between the first sentencing and this court's "reversal" (March 6, 2020, to February 15, 2024[5])), the court awarded 1442 actual days, with the Department of Corrections and Rehabilitation (CDCR) to calculate good time/work time.  For "phase III" (between February 16, 2024, and the resentencing on March 4, 2025), the court awarded 383 actual days, plus 57 days under section 2933.1, for a total of 440 days.

The trial court made a general order of restitution and specific orders of restitution to victim V.M. of $876,809.83, and to Oliver's mother of $55,660.05.[6]  The court made a finding that Gonzalez has no ability to pay fines and fees and waived or stayed all of them pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157, disapproved of in *People v. Kopp* (2025) 19 Cal.5th 1, 23, footnote 17.

Gonzalez appealed.

## II.  DISCUSSION

After reviewing the record pursuant to *Wende, supra,* 25 Cal.3d 436, this court requested supplemental briefing on "[w]hether the trial court erred at resentencing in awarding custody credits under Penal Code section 2933.1 for the period between the filing of this court's prior opinion in *People v. Gonzalez*, [*supra,*] H049857 . . . and appellant's resentencing date of March 4,

---

[4] These credits are the same as those given at Gonzalez's original sentencing.

[5] This court's opinion was filed on February 15, 2024.  The remittitur from this court is dated May 21, 2024, and was filed in the superior court on May 22, 2024.

[6] The trial court issued identical restitution orders at Gonzalez's original sentencing.

9

2025 (see *People v. Buckhalter* (2001) 26 Cal.4th 20, 33–34; *People v. Dean* (2024) 99 Cal.App.5th 391, 396–397" and, if so, whether this court should order the abstract of judgment corrected.

In their responsive briefing, the parties agree that the trial court erred in awarding presentence conduct credit for time Gonzalez spent in custody following his original sentencing. They request that this court order the abstract of judgment corrected.

We concur. The trial court's award of conduct credits for any period after Gonzalez was originally sentenced was error. As the California Supreme Court decided in *People v. Buckhalter, supra*, 26 Cal.4th at page 33, "an appellate remand solely for correction of a sentence already in progress does not remove a prisoner from the Director [of (CDCR)]'s custody or restore the prisoner to presentence status . . .. [D]efendant's temporary removal from state prison to county jail as a consequence of the remand did not transform him from a state prisoner to a local presentence detainee. When a state prisoner is temporarily away from prison to permit court appearances, he remains in the constructive custody of prison authorities and continues to earn sentence credit, if any, in that status."

At Gonzalez's resentencing, with respect to any custodial time following his original sentence, the trial court should have calculated only the " 'actual time' " Gonzalez had served, with CDCR responsible for calculating any postsentence credits. (See *People v. Dean, supra*, 99 Cal.App.5th at p. 397.) At Gonzalez's March 4, 2025 resentencing, the court should have credited Gonzalez with 2,406 days of actual credits, 87 days of conduct credits pursuant to section 2933.1 (for his presentence credits from his original sentencing), for a total of 2,493 days, and directed CDCR to calculate

10

Gonzalez's postsentence credits for the period between March 6, 2020, and his resentencing on March 4, 2025.

We will modify the judgment and direct the trial court to amend the resentencing minute order and abstract of judgment to correctly state the credits set out above. We further direct the trial court to amend the resentencing minute order and abstract of judgment to clearly reflect its order that CDCR calculate Gonzalez's good time/work time credits for the period from March 6, 2020, through March 4, 2025.

Having undertaken an examination of the entire record under *Wende*, *supra*, 25 Cal.3d 436 and *People v. Kelly* (2006) 40 Cal.4th 106, we find no other arguable error that would result in a disposition more favorable to Gonzalez. We affirm the judgment as modified.

### III. DISPOSITION

The judgment is affirmed. The trial court is directed to prepare an amended resentencing minute order and amended abstracts of judgment that: (1) state Gonzalez's total custody credits as 2,493 days, consisting of actual custody credits of 2,406 days, and local conduct credits of 87 days; and (2) order the California Department of Corrections and Rehabilitation to calculate Gonzalez's good time/work time credits for the period from March 6, 2020, through March 4, 2025.

The trial court clerk is directed to forward a certified copy of the amended abstracts of judgment to the California Department of Corrections and Rehabilitation.

11

_____
Danner, J.

WE CONCUR:

_____
Greenwood, P. J.

_____
Bromberg, J.

**H053194**
*People v. Gonzalez*